FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

JAN 10 2014

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BRIAN D. ANDERSON, | Case No. CV 13-06676 AN |
| Petitioner, | **ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY PURSUANT TO 28 U.S.C. § 2254 WITH PREJUDICE AS TIME-BARRED** |
| v. | |
| FRANK X. CHAVEZ, Warden, | |
| Respondent. | |

Before the Court is Respondent's Motion to Dismiss ("MTD") [17] the pending petition for writ of habeas corpus by a person in state custody pursuant to 28 U.S.C. § 2254 ("Petition"). The parties have consented to the Magistrate Judge's jurisdiction. (*See* [2], [9], [15], [16].) For the reasons discussed below, the MTD is granted and the Petition is dismissed with prejudice because it is time-barred.

## I. BACKGROUND

### A. State Court Proceedings

On August 8, 1996, Brian D. Anderson ("Petitioner") was convicted of eight counts of second degree robbery (CAL. PENAL CODE § 211) and one count of assault with a firearm (CAL. PENAL CODE § 245(a)(2)), following a jury trial in the California Superior Court for Los Angeles County (case no. GA015750). The jury also found true

allegations that in the commission of all nine offenses, Petitioner personally used a handgun (CAL. PENAL CODE § 12022.5(a)). Petitioner was acquitted of one count of second degree robbery. (Reporters' Transcript on Appeal ("RT") (Respondent's Lodged Document ("LD") 2) at 2857-62; Clerk's Transcript ("CT") (LD 1) at 2135-44.) Additionally, Petitioner admitted he had suffered one prior second-degree robbery conviction, which qualified as a "strike" under California's Three Strikes law (CAL. PENAL CODE §§ 667(b)-(i), 1170.12(a)-(d)), and as a serious felony for sentence enhancement purposes under CAL. PENAL CODE § 667(a). (RT at 2874-76; CT at 2172.) Petitioner was sentenced to a total term of fifty-six years and eight months in state prison. (RT at 2932-34; CT at 2185-87.)

Petitioner appealed his sentence to the California Court of Appeal. (LD 4.) On April 8, 1998, in an unpublished opinion (case no. B107735), the court of appeal affirmed the judgment. (LD 6.) Petitioner did not file a petition for review in the California Supreme Court. (Pet. at 3; MTD at 2.)

On February 6, 2007, Petitioner filed a habeas petition in the Los Angeles Superior Court raising two new sentencing claims. (LD 7.) On March 2, 2007, the superior court denied the petition. (LD 8 at 1-2.)

On December 19, 2011, Petitioner filed an additional habeas petition in the superior court, this time arguing that one of the witnesses at his trial, Eric Donaldson, was now retracting his testimony, and that constituted newly-discovered evidence of Petitioner's actual innocence on four of the nine counts of conviction. (LD 9.) On January 18, 2012, the superior court denied that petition on the basis that "[t]here were numerous witnesses who testified against the defendant at his trial and gave, what the jury found, substantial evidence of his guilt." (LD 8 at 2.)

On October 3, 2012, Petitioner filed a habeas petition in the California Court of Appeal raising the same arguments about Donaldson's allegedly false testimony and subsequent retraction. (LD 10.) On October 23, 2012, the state court of appeal denied the petition without comment or citation (case no. B244328). (LD 11.) On December

31, 2012, Petitioner filed a habeas petition in the California Supreme Court raising substantially the same arguments, and on May 22, 2013, that petition was denied without comment or citation (case no. S207690). (LD 12&13.)

**B.      Pending Proceedings**

On September 3, 2013, Petitioner, proceeding *pro se*, constructively filed[1] the pending Petition raising three claims challenging his August 8, 1996 conviction as to four of the nine counts. All three claims are based upon the same allegedly newly-discovered evidence, i.e., that Donaldson is now retracting his testimony and claiming he was improperly coached by law enforcement to testify falsely. (Pet. at 5-6; attached pages (4); attached 11/26/10 Hi-Caliber Investigations Witness Statement ("Witness Statement"); attached Declaration of Eric Donaldson ("Donaldson Decl.").) On December 4, 2013, Respondent filed the pending MTD arguing that the Petition should be dismissed because it is time-barred by more than fourteen years, and that Petitioner has failed to present a credible showing of actual innocence sufficient to constitute an equitable exception to the applicable one-year statute of limitation. (MTD at 11-23.) Petitioner has filed his Opposition to the MTD [19]. Because the Court finds in Respondent's favor, below, it is unnecessary that Respondent file a reply, and the matter now stands ready for decision.

///

///

///

---

[1] Pursuant to the "mailbox rule," a *pro se* prisoner's federal habeas petition is deemed to be filed on the date the prisoner delivers the petition to prison authorities for mailing to the clerk. *Houston v. Lack*, 487 U.S. 266, 270-71, 108 S. Ct. 2379 (1988); *Huizar v. Carey*, 273 F.3d 1220, 1222 (9th Cir. 2001); *see also* Habeas Rule 3(d). For purposes of the timeliness analysis, the Court finds Petitioner constructively filed the Petition by delivering it to the prison mail system on September 3, 2013, which is the date handwritten next to the signature of a prison official on the back of the envelope containing the petition.

## II. DISCUSSION

**A. Statute of Limitations**

The Petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which establishes a one-year statute of limitations for state prisoners to file a federal habeas petition. 28 U.S.C. § 2244(d)(1). In most cases, the limitations period is triggered by "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

As discussed above, Petitioner was convicted of the above offenses on August 8, 1996, and the California Court of Appeal affirmed the judgment on April 8, 1998. Because Petitioner did not file a petition for review of that decision in the California Supreme Court, his conviction became final for purposes of AEDPA's limitations period on May 18, 1998, the fortieth day after the California Court of Appeal affirmed the judgment. *See* CAL. CT. R. 8.366(b)(1); 8.500(e)(1); *Waldrip v. Hall*, 548 F.3d 729, 735 (9th Cir. 2008); *Smith v. Duncan*, 297 F.3d 809, 812-13 (9th Cir. 2002).

The statute of limitations then started to run the next day, on May 19, 1998, and ended a year later on May 19, 1999. 28 U.S.C. § 2244(d)(1)(A); *see also Patterson v. Stewart*, 251 F.3d 1243, 1245-47 (9th Cir. 2001) (the limitations period begins to run on the day after the triggering event pursuant to Fed. R. Civ. P. 6(a)). As also stated above, Petitioner did not constructively file his pending Petition until September 3, 2013 -- 5,221 days (more than fourteen years) after the expiration of the limitations period. Accordingly, absent some basis for tolling or an alternative start date to the limitations period under 28 U.S.C. § 2244(d)(1), the pending Petition is considerably time-barred.

**B. Statutory Tolling**

AEDPA includes a statutory tolling provision that suspends the limitations period for the time during which a "properly-filed" application for post-conviction or other collateral review is "pending" in state court. 28 U.S.C. § 2244(d)(2); *Waldrip*,

548 F.3d at 734; *Bonner v. Carey*, 425 F.3d 1145, 1148 (9th Cir. 2005). However, to qualify for statutory tolling, a state habeas petition must be filed before the expiration of AEDPA's limitations period. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); *see also Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state-court petition [] that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").

As discussed in detail above, Petitioner has filed four state habeas petitions, all of which were denied. However, the first of those petitions was not filed until February 6, 2007, 2,820 days (nearly eight years) after AEDPA's limitations period expired on May 19, 1999. Thus, Petitioner is not entitled to any statutory tolling. *Ferguson*, 321 F.3d at 823; *Webster*, 199 F.3d at 1259.

### C. Alternative Start of the Statute of Limitations

#### 1. State-Created Impediment

In rare instances, AEDPA's one-year limitations period can run from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). Asserting that the statute of limitations was delayed by a state-created impediment requires establishing a due process violation. *Lott v. Mueller*, 304 F.3d 918, 925 (9th Cir. 2002). Petitioner has not alleged or set forth any facts for an alternate start date of the limitations period under this provision.

#### 2. Newly Recognized Constitutional Right

AEDPA provides that, if a claim is based upon a constitutional right that is newly recognized and applied retroactively to habeas cases by the United States Supreme Court, the one-year limitations period begins to run on the date which the new right was initially recognized by the Supreme Court. 28 U.S.C. § 2244(d)(1)(C).

5

Petitioner has not alleged or set forth any facts for an alternate start date of the limitations period under this provision.

### 3. Discovery of Factual Predicate

AEDPA also provides that, in certain cases, its one-year limitations period shall run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D); *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012). Petitioner has not alleged or set forth any facts for an alternate start date of the limitations period under this provision.

## D. Equitable Tolling

AEDPA's limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 130 S. Ct. 2549, 2560 (2010). Specifically, "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807 (2005); *Lawrence v. Florida*, 549 U.S. 327, 336, 127 S. Ct. 1079 (2007). However, "[e]quitable tolling is justified in few cases" and "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (*quoting Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002)).

Petitioner has not alleged or set forth any facts for equitable tolling, so he has failed to satisfy either *Pace* requirement and is not entitled to any equitable tolling. *Pace*, 544 U.S. at 418; *see also Stancle v. Clay*, 692 F.3d 948, 953 (9th Cir. 2012) ("The petitioner bears the burden of demonstrating that he or she is entitled to equitable tolling.").

## E. Alleged Actual Innocence

In his Opposition to the MTD, Petitioner does not dispute any aspect of the above statute of limitations analysis, or that this action is time barred. His sole

argument is that the Court should consider the merits of his time-barred claims on the basis of actual innocence. (Pet. at 5-6; attached pages (4); Witness Statement; Donaldson Decl.; Opp'n at 1-6.)

Under *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851 (1995), "a credible claim of actual innocence constitutes an equitable exception to AEDPA's limitations period, and a petitioner who makes such a showing may pass through the *Schlup* gateway and have his otherwise time-barred claims heard on the merits." *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011). However, "[i]n order to present otherwise time-barred claims to a federal habeas court under *Schlup*, a petitioner must produce sufficient proof of his actual innocence to bring him within the narrow class of cases . . . implicating a fundamental miscarriage of justice." *Id.* at 937 (internal quotation marks and citations omitted). While a petitioner is not required to proffer evidence creating an "absolute certainty" about his innocence, the *Schlup* gateway is an "exacting standard" that permits review only in the "extraordinary case." *Id.* at 938; *see also House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064 (2006). Specifically, Petitioner must show "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Lee*, 653 F.3d at 938; *Schlup*, 513 U.S. at 327. The evidence of innocence must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Lee*, 653 F.3d at 938-39; *Schlup*, 513 U.S. at 316. Further, Petitioner must support his allegations "with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup*, 513 U.S. at 324.

Petitioner's actual innocence claim only concerns four of the nine counts of conviction, and hinges on his allegations that Donaldson has come forward to repudiate his trial testimony. In support of Petitioner's assertions, he attaches to his Petition: (1) the Witness Statement, which is an unauthenticated synopsis of a November 26, 2010 interview between a private investigator and Donaldson; (2) a document purporting to

be Donaldson's own Declaration, also unauthenticated, dated November 17, 2011. The substance of both documents, in pertinent part, is fairly summarized as follows. Donaldson was Petitioner's cohort. Donaldson claims he was "indirectly" given an offer of a reduced sentence in exchange for his testimony against Petitioner. He also states that he lied when he testified that implicating Petitioner was not part of his plea agreement. Donaldson claims the detectives investigating the robberies had a vendetta against, and a "real hatred" for, Petitioner and wanted him off the street. Donaldson recalls that he personally committed four robberies and Petitioner was only present during two or three. Donaldson now believes Petitioner was prosecuted for more robberies than he committed. Despite Petitioner being implicated as having pointed a gun at a child during one robbery, Donaldson does not recall children being present during any of the robberies, but he states that the detectives coached him to say so, and told him he would be punished if he did not "speak on those robberies." As a result, Donaldson states he falsely testified at trial that he observed Petitioner confront two men and a girl between two and four years old. Also apparently despite testifying otherwise, Donaldson now claims he never saw anyone pistol-whipped, had no knowledge of Petitioner committing a robbery on the day the men were arrested, and never saw Petitioner with a wallet or woman's purse. Donaldson also claims he was "coached" by detectives to provide false details and locations of the robberies, and some of his testimony was the result of that coaching instead of his own recollection. Additionally, Donaldson believes the police used robberies committed by two other suspects to build a case against Petitioner and Donaldson. Donaldson states that one of those other suspects told him he was threatened with prosecution for the robberies unless he testified against Petitioner and Donaldson. (Witness Statement at 1-3; Donaldson Decl. at 1-2.)

      Petitioner's assertion of actual innocence falls grossly short. First, even assuming Donaldson's Declaration and the Witness Statement are authentic, they are certainly not "new *reliable* evidence . . . that was not presented at trial." *Schlup*, 513 U.S. at 324

(emphasis added). At the outset, Petitioner's conclusion that Donaldson recanting his testimony means he testified falsely is rejected on its face. *See Allen v. Woodford*, 395 F.3d 979, 994 (9th Cir. 2005) (witness's "later recantation of his trial testimony does not render his earlier testimony false."). But even more important, setting aside the many reasons to view *any* recanting testimony with suspicion,[2] Donaldson's assertions are particularly unreliable because they were made no sooner than November 26, 2010, more than fourteen years after he testified at Petitioner's trial. *See Christian v. Frank*, 595 F.3d 1076, 1084 n.11 (9th Cir. 2010) (recantation found "especially unreliable" because it was made more than a decade after the witness testified at trial).

Donaldson's recantation is rendered even more suspicious by the fact that he did not make it until it was safe for him to lie under oath. Donaldson was sentenced on August 30, 2010, for the first degree murder of his girlfriend, so he is already in prison for the foreseeable future, and the statute of limitations for perjury at Petitioner's trial has expired. *See People v. Donaldson*, No. E051750, 2012 WL 12847, at *1 (Cal. Ct. App. Jan. 4, 2012); CAL. PENAL CODE §§ 126, 801; (state court records.[3]) Donaldson's "wholesale disavowal of parts of his previous testimony" fails to satisfy the *Schlup* standard in part because he now "faces almost no consequences for lying." *See Smith v. Baldwin*, 510 F.3d 1127, 1141-42 (9th Cir. 2007).

---

[2] "Recanting testimony has long been disfavored as the basis for a claim of innocence. Appellate courts, even on direct review, look upon recantations with extreme suspicion. (Citations and footnote omitted.) Recanting testimony is easy to find but difficult to confirm or refute: witnesses forget, witnesses disappear, witnesses with personal motives change their stories many times, before and after trial." *Carriger v. Stewart*, 132 F.3d 463, 483 (9th Cir. 1997) (Kozinski, J., dissenting).

[3] The Court takes judicial notice of Internet records relating to this action in the state appellate courts (available at http://appellatecases.courtinfo.ca.gov). *See Smith v. Duncan*, 297 F.3d 809, 815 (9th Cir. 2002) (federal courts may take judicial notice of related state court documents), *overruled on other grounds as recognized in Cross v. Sisto*, 676 F.3d 1172 (9th Cir. 2012).

Additionally, the Court rejects Petitioner's contention that Donaldson has given "valid reasons" for testifying falsely. (Opp'n at 4.) Instead, the Court concurs with Respondent's conclusion that it "strains credulity" to claim officers would coerce Donaldson to falsely implicate Petitioner, based on a vendetta and desire to make sure he did not go free, when only four of nine counts are at issue, accounting for only seventeen years and four months of Petitioner's fifty-six-year and four-month sentence. (*See* MTD at 21; CT at 2185-87.)

The foregoing establishes Petitioner has not proffered *reliable*, new evidence of his innocence. *Schlup*, 513 U.S. at 324.

Second, assuming the truth of Petitioner's assertions, if Donaldson did testify falsely at the time of his trial - implicating Petitioner in robberies, and violent acts against children, he did not commit - the proffered evidence is also not "*new* reliable evidence." *Schlup*, 513 U.S. at 324 (emphasis added); *see also Chestang v. Sisto*, 522 Fed. Appx. 389, 391 (9th Cir. 2013) (cited pursuant to 9th Cir. R. 36-3) ("[A]ctual innocence claims focus on 'new' evidence - i.e., 'relevant evidence that was either excluded or unavailable at trial.'") (*quoting Schlup*, 513 U.S. at 327-28). Petitioner was obviously aware of his own actions, and he was present at his trial. While Donaldson's recantation is ostensibly "new" as of 2010 and 2011, it concerns allegedly false testimony that took place in 1996, and which was clearly within Petitioner's knowledge. That is, if the facts as Donaldson now ostensibly alleges were true, Petitioner was aware of those facts at the time of trial, yet he never attempted to bring them to any court's attention earlier than his state habeas petition filed on December 19, 2011. *Id.*; *see also McQuiggin v. Perkins*, --- U.S. ----, ----, 133 S. Ct. 1924, 1935 (2013) ("Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing.").

Third, Petitioner has failed to show Donaldson's recantation would overcome the evidence at trial. His arguments ignore the fact that Donaldson's testimony was not the only evidence of his guilt of the four counts at issue. Indeed, as to those counts,

Petitioner's guilt was established by numerous facts, such as a field show-up identification of the victims themselves (RT at 1446, 1519); another victim's accurate description of Petitioner's physical characteristics (RT at 1407-09, 1417, 1425, 1909); Petitioner's attempt to flee the police (RT at 1726, 1730, 1929-31, 1955, 1967-70); Petitioner's post-arrest statement that he was "going to prison for this" (RT at 1910-11); Petitioner's statement to the police that he disposed of the gun he used (RT at 1913, 1916); Petitioner's accurate identification of the location of a stolen purse (RT at 1920-23, 2168-69); as well as the very similar modus operandi between the robberies at issue and several other robberies Petitioner committed, including accosting victims in the street in the Pasadena area shortly after nightfall, brandishing a handgun, demanding their purses and wallets, then immediately fleeing. *See United States v. Momeni*, 991 F.2d 493, 494 (9th Cir. 1993) (finding evidence of modus operandi alone may be sufficient to establish a perpetrator's identity). Consequently, Petitioner has not shown "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Lee*, 653 F.3d at 938; *Schlup*, 513 U.S. at 327.

Put another way, under the circumstances, "[a]ssessing 'how reasonable [factfinders] would react to the overall, newly supplemented record,'" it is highly unlikely "every juror would have reasonable doubt that [Petitioner] was guilty." *Chestang*, 522 Fed. Appx. at 391 (*quoting Lee*, 653 F.3d at 929).

Petitioner has not presented a credible claim of actual innocence such that he "may pass through the *Schlup* gateway and have his otherwise time-barred claims heard on the merits." *Lee*, 653 F.3d at 932.

///
///
///
///
///
///

**ORDER**

Based upon the foregoing, IT IS HEREBY ORDERED THAT Respondent's MTD is GRANTED and the Petition is dismissed with prejudice as time-barred. The Clerk is directed to enter judgment dismissing this action with prejudice and serve a copy of this Order on all counsel or parties of record. Any and all pending motions are denied as moot and terminated.

Dated: January 10, 2014

ARTHUR NAKAZATO
UNITED STATES MAGISTRATE JUDGE